## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| KENNETH A. THOMAS MD, LLC, a Connecticut limited liability company, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-10957-DPW |
| *Plaintiff*, | |
| *v.* | |
| BEST DOCTORS, INC., a Delaware corporation, | |
| *Defendant.* | |

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kenneth A. Thomas MD, LLC ("Thomas" or "Plaintiff") brings this Amended Class Action Complaint against Defendant Best Doctors, Inc. ("Best Doctors" or "Defendant"), to stop its practice of sending unauthorized and unwanted fax advertisements, and to obtain redress for all persons and entities similarly injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## NATURE OF THE ACTION

1.    This case challenges Defendant Best Doctors' practice of sending unsolicited faxes to doctors' offices.[1]

2.    The faxes ostensibly invite the doctor-recipient to be included in Defendant's "Best Doctors of America List" by verifying and updating their contact information such as the doctor-recipient's clinic address. But, there are at least four advertising related reasons that

---

[1] Copies of the faxes Best Doctors sent to Plaintiff are attached as Exhibit A.

Defendant sends these faxes.

3.      First, the faxes advertise the commercial availability and quality of Defendant's "programs and services" including its "Find a Best Doctor™ service in which members request names of Best Doctors who treat their specific condition and who are in their geographic location," and its "virtual medical review service called InterConsultation®." Plaintiff is a potential direct consumer of these programs and services, which are often a component of employee benefits packages. In fact, if Plaintiff had responded to Best Doctors' fax advertisements, Best Doctors would have provided Plaintiff with "complementary" access to Best Doctors' list of Best Doctors physicians for Plaintiff's "professional or personal use."[2]

4.      Second, the faxes are a pretext to advertise "Best Doctors" branded merchandise to doctors, and are a direct precursor to subsequent express solicitations by Best Doctors to fax recipients to purchase *exclusive* Best Doctors branded plaques. In fact, on information and belief, among other follow-up attempts to subsequently sell Best Doctors plaques to fax recipients, in the information packet Best Doctors provides as a follow-up to all physicians, hospitals, and medical practices that respond to Best Doctors' faxes and become Best Doctors, Best Doctors repeatedly solicits the "**Purchase [of] the exclusive Best Doctors wall plaque or desktop commemorative,** a tasteful addition to your waiting room or office."[3] (Emphasis in original.)

5.      Third, the faxes are part of an overall marketing campaign to make Best Doctors' products and services more desirable to consumers by growing Best Doctors' network of

---

[2] *See* a copy of the information packet that, on information and belief, Best Doctors provides as a follow-up to all physicians, hospitals, and medical practices that respond to Best Doctors faxes and become Best Doctors, attached as Exhibit B, at p. 2.

[3] Exhibit B at pp. 2, 16, 18.

providers.

6.      And fourth, the faxes are *help wanted* advertisements through which Best Doctors solicits physicians to offer their services to Best Doctors in return for compensation.  In fact, one of the express "benefits" of being a listed Best Doctor is the opportunity to "**Earn honoraria**," and in the faxes, Best Doctors admits that it solicits fax recipients "to participate in other Best Doctors programs such as … Interconsultation," for which Best Doctors pays the fax recipients "a fee for the Services."[4]

7.      Defendant Best Doctors sent the faxes at issue to Plaintiff and the Class despite: (i) having no established business relationship with them; (ii) never receiving the recipients' consent to send them such faxes; and (iii) that none of the faxes sent contained requisite opt-out notices.

8.      As such, Defendant's fax advertisements violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and caused Plaintiff and putative members of the Class to suffer actual harm, including the aggravation and nuisance of receiving such faxes, the loss of use of their fax machines during the receipt of such faxes, and increased labor expenses.

9.      Accordingly, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized fax-based marketing activities, as well as an award of actual and statutory damages, along with costs.

---

[4] *See* Exhibit A; Exhibit B at p. 2; and an exemplar Agreement for Expert Consulting Services between physicians and Best Doctors describing the independent contractor relationship and compensation between the parties, attached as Exhibit C, at pp. 1, 3.

## PARTIES

10.     Plaintiff Kenneth A. Thomas MD, LLC is a Connecticut limited liability company with its principal place of business in Stratford, Connecticut.

11.     Defendant Best Doctors is a Delaware corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the TCPA, a federal statute for which there is federal question jurisdiction.

13.     The Court has personal jurisdiction over Defendant and venue is proper in this District because the wrongful conduct giving rise to Plaintiff's cause of action arose and emanated from this District and because Defendant Best Doctors maintains its primary place of business in this District.

## COMMON FACTUAL ALLEGATIONS

14.     Defendant is a for-profit company that sells health programs and services to consumers and organizations, sells "Best Doctors" branded goods to doctors included in the Best Doctors database, and solicits Best Doctors to provide their services for pay.

15.     As part of an overall marketing plan to advertise its programs, services, and goods, Best Doctors sends unsolicited faxes to doctors and their organizations.  The faxes constitute advertisements for at least four different reasons.

16.     First, the unsolicited faxes advertise the commercial availability and quality of the Best Doctors "programs and services" Defendant provides to its "members" for a fee built into their employee benefits package or health insurance policy, including Defendant's Find a Best

Doctor$^{TM}$ service and its InterConsultation® service.

17.    As stated in the faxes, the Find a Best Doctor service allows "members [to] request names of Best Doctors who treat their specific condition and who are in their geographic location."  Similarly, Best Doctors' "virtual medical review service called InterConsultation®" makes use of the Best Doctors database of physicians.

18.    As explained on Best Doctors' website, "[t]he Best Doctors network includes over 50,000 of the world's top medical experts. Each has been designated as among the best by other doctors through an exclusive, Gallup®-certified process."[5]  These are the same qualities of the Find a Best Doctor and InterConsultation service described in Defendant's fax advertisements, which explain "clinicians selected for the newest Best Doctors database … are included based on the result of our extensive, confidential peer review process" and based on Best Doctors' "process … to confirm that [physicians in its newest database] are currently seeing patients [and] to insure the accuracy of [physicians'] information" in Best Doctors' database.

19.    Plaintiff is a potential direct consumer of Best Doctors' Find a Best Doctor and Interconsultation services, which are frequently included as part of employee benefits packages. In fact, fax recipients like Plaintiff that ultimately respond to Best Doctors' faxes and become Best Doctors physicians are provided "complementary benefits" including access to the list of Best Doctors for their "professional or personal use" while they remain Best Doctors.[6]

20.    <u>Second</u>, in addition to advertising the commercial availability and quality of Best Doctors' programs and services, the faxes also serve as a pretext to advertise Best Doctors branded goods to doctors.  The faxes identify Best Doctors' webpage for physicians

---

[5] Best Doctors, *How it Works* (https://bestdoctors.com/for-individuals/how-it-works/ (last accessed Apr. 19, 2018)).
[6] *See* Exhibit B.

(http:/bestdoctors.com/for-physicians) that serves only three express purposes: to explain the

process for the Best Doctors poll, to sell Best Doctors branded goods (on a linked webpage titled

"Plaques"), and to respond to questions frequently asked by physicians.  Notably, aside from the

multiple solicitations and plaque order form included in the webpage titled "Plaques," the

frequently asked questions page for physician also includes a solicitation to purchase Best

Doctors plaques:



21.      Additionally, Best Doctors faxes are a precursor to subsequent, explicit solicitations

to fax recipients to purchase plaques.  In fact, the information packet provided to every fax

recipient that responds to the fax and becomes a Best Doctor includes multiple solicitations for

Best Doctors plaques, including a full-page plaque order form:

## The Best Doctors in America®
# Commemoratives



At the request of Best Doctors physicians, we offer customized recognition items to any physician who has ever been selected as a Best Doctor. These items make a handsome addition to any lobby, waiting room or home office to tastefully showcase your accomplishment.

All items feature the physician's name in preferred format: John Sample, MD or Dr. John Sample.

### HOW TO ORDER YOUR BEST DOCTORS PLAQUE

 **Online with Credit Card**—Order at usplaques.bestdoctors.com (For your security we do not accept credit card orders by fax or U.S. Mail).

 **By Mail**—complete this form and mail with check to Best Doctors, Inc. at the address noted below.

 **By Purchase Order**—fax this form with the Purchase Order to 866.904.0913 or mail both to the address noted below.

Contact us for discounts on multiple orders.



### STANDARD PLAQUE

Features the Best Doctors logo, your name and appropriate inclusion years on a polished brass plate mounted on beautifully crafted, hand-finished solid cherry.

**$265**

### ORDER FORM

I would like to purchase:
Qty. x Desktop Commemorative(s) $265
Qty. x Standard Plaque(s) $265
Qty. x 1st Year Inclusion Plaque(s) $290
Name as it should appear on the plaque (Dr, MD or DO)
(up to 28 characters)

### 1ST YEAR INCLUSION PLAQUE



Same as the standard, this one is designed for physicians who have been selected for multiple years and is customized to display both the first year of selection and the current listing years.

**$290**

Shipping Address  (UPS/FedEx Delivery. Physical address required.)

Attn:

| City | State | Zip |
|---|---|---|

Telephone

Email (required for order confirmation)

Payment Information: (Prices include Shipping & Handling)
Check #                    Purchase Order #



### DESKTOP COMMEMORATIVE

For those who prefer, this is a stylishly curved, clear acrylic with light catching gold accent and a flat base.

**$265**

We are required to collect sales tax in the following states where Best Doctors, Inc. is located: FL, IL, MA, MD, SC.

Tax exempt facilities must provide a current legible copy of the tax exempt certificate.

Please allow a minimum of 8 weeks for customization and delivery. Delivery times may be longer during peak demand.

Best Doctors, Inc. | Polling & Research
5230 Woodside Executive Court | Aiken, SC 29803
Phone 800.675.1199 | Fax 866.904.0913

## ORDER YOURS ONLINE
usplaques.bestdoctors.com
Contact us at plaques@bestdoctors.com
or 617.963.1167 with questions

Best Doctors, Inc. | Polling & Research
5230 Woodside Executive Court | Aiken, SC 29803 | Tel: 800.675.1199 | Fax: 803.643.0315 | www.bestdoctors.com
BEST DOCTORS® and the STAR-IN-CROSS logo are registered trademarks of Best Doctors, Inc. in the United States and in other countries. Used with permission.

22.     Best Doctors also solicits fax recipients to purchase plaques in the press releases Best Doctors issues in connection with the selection of new Best Doctors.[7]  For example, in Best Doctors' press release identifying "Connecticut's Best Doctors 2018," which, on information and belief, would have included Plaintiff if he had responded to the faxes, Best Doctors solicits listed doctors to purchase *exclusive* Best Doctors branded plaques, stating:

> *Best Doctors, Inc. is the only authorized source of the official Best Doctors in America® plaque and other recognition items.  Best Doctors does not authorize, contract with or license any organization to sell recognition items for Best Doctors, Inc.  Please contact Best Doctors at plaques@bestdoctors.com with any questions.  For more information or to order visit usplaques.bestdoctors.com or call 617-963-1167.*[8]

23.     Best Doctors also expressly solicits recipients of faxes who become Best Doctors to purchase plaques as part of their registration for Best Doctors celebratory events:

---

[7] *See* Exhibit B at p. 2, describing "**Recognition in local media**" as one of the "benefits" of becoming a Best Doctors physician.

[8] *Connecticut's Best Doctors 2018 press release*, Connecticut Magazine (http://www.connecticutmag.com/article_af095394-27da-11e8-b933-9b11a0051c15.html (last accessed Oct. 31, 2018)).

[9] *Wichita Best Doctors celebration registration*, Wichita Business Journal (https://www.bizjournals.com/wichita/event/162110/2018/2018-best-doctors (last accessed Oct. 31, 2018)).

24.     Remarkably, if every Best Doctors physician were to purchase one Best Doctors plaque, Best Doctors would net over $13 million in revenue every two years.  More remarkably, Best Doctors offers bulk pricing, suggesting that some Best Doctors physicians purchase "30 or more" plaques at a time:

| https://usplaques.bestdoctors.com/BulkDiscounts.asp?ProductID=10&ProductCode=BD-PLI&Orig_Price=290 |
| --- |

| Discount10 | | |
| --- | --- | --- |
| **Buy…** | **Save…** | New Price… |
| 10 - 19 | 5% | $275.50 per order |
| Discount20 | | |
| **Buy…** | **Save…** | New Price… |
| 20 - 29 | 10% | $261.00 per order |
| Discount30 | | |
| **Buy…** | **Save…** | New Price… |
| 30 or more | 15% | $246.50 per order |

25.     <u>Third</u>, in addition to being a pretext and precursor to further solicitations to purchase Best Doctors plaques, the faxes are advertisements because they are part of an overall marketing campaign to make Best Doctors' products and services more desirable to consumers by growing Best Doctors' network of providers.

26.     <u>Fourth</u>, and finally, the faxes are advertisements because they solicit physicians' services for pay, and/or were a precursor to soliciting physicians' services for pay.  Although a physician cannot pay to be added to the Best Doctors list, one of the touted "benefits" of being a Best Doctor is the opportunity to "**Earn honoraria**" and to otherwise "participate in other Best Doctors programs such as … Interconsultation," for which Best Doctors also pays the fax recipients "a fee for the[ir] Services."[10]

27.     Accordingly, Best Doctors faxes are advertisements.

28.     The fax advertisements at issue failed to provide recipients with proper opt-out

---

[10] *See* Exhibit A; Exhibit B at p. 2; Exhibit C. at pp. 1, 3.

notice information required by the TCPA and implementing regulations. Specifically, the faxed

failed to provide notice identifying a facsimile number and domestic contact telephone number

for fax recipients to transmit their opt-out requests.

29.     Defendant Best Doctors sends these fax advertisements to individuals and

business with which it has no existing business relationship, and without express invitation or

permission, in violation of the TCPA.

30.     Best Doctors used a telephone facsimile machine, computer, or other device to

send the fax advertisements at issue.

## FACTS SPECIFIC TO PLAINTIFF THOMAS

31.     On or about May 16, 2017, Best Doctors used a telephone facsimile machine to

send five unsolicited fax advertisements to Plaintiff Thomas. (True and accurate copies of the fax

advertisements are attached hereto as Exhibit A).

32.     The fax advertisements promoted the commercial availability and quality of Best

Doctors' Find a Best Doctor and InterConsultation services and its Best Doctors branded goods,

were part of an overall campaign to increase Best Doctors' business, and solicited physicians to

provide their services to Best Doctors for pay, and/or were a precursor to such solicitations.

33.     Although Plaintiff corresponded in 2011 and/or 2012 with Defendant regarding its

Best Doctors database, at the time Plaintiff received Defendant's five fax advertisements,

Plaintiff Thomas had no existing business relationship with Best Doctors, and had never

provided it with consent to receive advertisements through any medium, let alone by fax.

34.     The fax advertisements failed to contain the required opt-out notice mandated by

47 U.S.C. § 227(b)(2)(D) and 47 C.F.R. § 64.1200(a)(4)(iii)-(iv). Specifically, the faxes failed to

contain language that identified a facsimile number and telephone number for fax recipients to

transmit their opt-out requests.

## CLASS ACTION ALLEGATIONS

35.     **Class Definitions:** Plaintiff Thomas brings this action pursuant to Federal Rules

of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of a Class of similarly

situated individuals defined as follows:

> All persons and entities who (1) on or after four years prior to the filing of the initial
> complaint in this action, (2) received a telephone facsimile advertisement, (3) sent
> from or on behalf of Best Doctors, and (4) from whom Best Doctors did not have a
> record of prior express consent to send the facsimile advertisements.

The following individuals are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendant, its subsidiaries,

parents, successors, predecessors, and any entity in which Defendant or its parents have a

controlling interest and their current or former employees, officers and directors; (3)

Plaintiff's attorneys; (4) persons who properly execute and file a timely request for

exclusion from the Class; (5) the legal representatives, successors or assigns of any such

excluded persons; and (6) persons whose claims against Defendant have been fully and

finally adjudicated and/or released. Plaintiff anticipates the need to amend the class

definitions following appropriate discovery.

36.     **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiff

at this time, but it is clear that individual joinder is impracticable. On information and belief,

Defendant faxed unsolicited advertisements to thousands of individuals and entities who fall into

the definition of the Class. Class membership can be easily determined from Defendant's

records.

37.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

Class. Plaintiff is a member of the Class, and if Defendant violated the TCPA with respect to

Plaintiff, then it violated the TCPA with respect to the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct.

38.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)    How Defendant gathered, compiled, or obtained the fax numbers of Plaintiff and the Class;

b)    Whether Defendant's faxes advertised the commercial availability or quality of property, goods, or services;

c)    Whether Defendant sent the fax advertisements without first obtaining Plaintiff and the Class's prior express permission or invitation to do so; and

d)    Whether Defendant's conduct was willful such that Plaintiff and the Class are entitled to treble damages.

39.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

40.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law

applicable only to Plaintiff.

41.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### <u>(On Behalf of Plaintiff and the Class)</u>

42.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

44.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47

U.S.C. § 227(a)(5).

45.     The faxes sent by Defendant advertised the commercial availability and quality of its goods and services and were commercial in nature. Therefore, Defendant's faxes are advertisements under the TCPA.

46.     Defendant sent the fax advertisements at issue to Plaintiff and members of the Class without their prior express invitation or consent, and despite the lack of an existing business relationship between it and members of the Class.

47.      By sending the unsolicited fax advertisements at issue to Plaintiff and members of the Class without their prior express invitation or permission, Defendant violated 47 U.S.C. § 227(b)(1)(C).

48.     As a result of Defendant's conduct, Plaintiff and the members of the No Consent Class suffered actual damages, including the conversion or loss of paper and toner consumed in the printing of the faxes, the loss of use of the recipients' fax machines during the time required to receive, review and route the unauthorized faxes, as well as increased labor expenses.

49.     Plaintiff and the Class are therefore entitled to a minimum of $500 in damages for each violation under 47 U.S.C. § 227(b)(3)(B). To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

50.     Additionally, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and the Class, prays for the following relief:

A.      An order certifying the Class as defined above, appointing Kenneth A. Thomas MD, LLC as the representative of the Class, and appointing its counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate the TCPA;

C.      An order declaring that Defendant's faxes constitute unsolicited advertisements, that they lacked the required opt-out language, and that Defendant sent the faxes without first obtaining prior express invitation or permission of the recipients, and enjoining Defendant from further violations, and otherwise protecting the interests of the Class;

D.      An award of statutory damages;

E.      An award of pre-judgement interest and costs; and

F.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KENNETH A. THOMAS MD, LLC**, individually and on behalf of all others similarly situated,

Dated: October 31, 2018

By:___ /s/ Jason Campbell_____

Jason Campbell, Esq.
250 First Avenue, Unit 602
Charlestown, MA 02129
(617) 872-8652
jasonrcampbell@ymail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com

Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the Class*

*\* Admitted Pro Hac Vice*

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 31, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<u>*/s/ Jason Campbell*</u>