# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MASSACHUSETTS

KENNETH A. THOMAS MD, LLC, a
Connecticut limited liability company,
individually and on behalf of all others similarly
situated,

       *Plaintiff*,

*v.*

BEST DOCTORS, INC.,

       *Defendant.*

Case No. 1:18-cv-10957-DPW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
<u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiff Kenneth A. Thomas MD, LLC, on behalf of itself and a class of similarly situated persons, with the consent of Defendant Best Doctors, Inc., respectfully requests the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying a class for settlement purposes, and providing for issuance of Notice to the Class Members.[1]

## I.    **INTRODUCTION**

The Settlement Agreement makes $738,375.00 available to fund the settlement, after payment of settlement costs.   Under the Settlement Agreement, individual payments will automatically be issued to all Settlement Class Members who do not opt out of the Settlement without the need for them to submit claim forms, and there is no reversion to Defendant of any unclaimed monies payable to Settlement Class Members.   If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, protracted and hard-fought litigation centered on unsettled legal questions.

The motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Class for purposes of the settlement only and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice program describing:

   a. The Settlement and the Class Members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorney's fees and expenses and a Service Award for the Class Representative; and

---

[1] The Settlement Agreement and its Exhibits are attached as Exhibit A. All capitalized terms used herein have the same definitions as in the Settlement Agreement.

    d.   The procedure for opting-out of or objecting to the Settlement; and

5. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Avi Kaufman ¶ 2, attached hereto as Exhibit B.  First, it provides automatic relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, and extensive arm's-length negotiations. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Kaufman Decl. ¶ 3.  Finally, the Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

The TCPA and its implementing regulations make it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C).

On May 14, 2018, Plaintiff initiated this litigation against Best Doctors in the United States District Court for the District of Massachusetts alleging violations of the TCPA arising from certain facsimiles Plaintiff received from Best Doctors, and seeking, *inter alia,* monetary damages. *See* [DE #1].

On July 16, 2018, Best Doctors filed a Motion to Dismiss Plaintiff's Complaint, and on July 30, 2018, Plaintiff filed a response to the Motion to Dismiss. [DE ##7, 12]. On August 9, 2018, Best Doctors filed a Reply in Support of its Motion to Dismiss, and on August 22, 2018, Plaintiff filed a Surreply in Opposition to the Motion to Dismiss. [DE ##15, 18]. On October 17, 2018, the Court held a hearing on Best Doctors's Motion to Dismiss, denied the Motion to Dismiss without prejudice, and granted Plaintiff leave to file an amended complaint. [DE #20].

On October 31, 2018, Plaintiff filed an Amended Complaint. [DE # 23]. On December 7, 2018, Best Doctors filed an Answer and Affirmative Defenses to the Amended Complaint. [DE #26]. The parties thereafter met and conferred regarding Best Doctors's affirmative defenses asserting the existence of an established business relationship with certain facsimile recipients, resulting in Best Doctors's agreement to withdraw the established business relationship-based defenses. *See* [DE #27].

On December 14, 2018, Best Doctors filed a Petition for Declaratory Ruling to the Federal Communications Commission, and on December 31, 2018, Best Doctors filed a Motion to Stay the action pending the FCC's ruling on Best Doctors's Petition. [DE #28]. On January 28, 2019, Plaintiff filed a Response to Best Doctors's Motion to Stay, and on January 29, 2019, Plaintiff filed a Comment to Best Doctors's Petition to the FCC. [DE ##33, 34]. On February 5, 2019, Best Doctors filed a Reply in Support of its Motion to Stay. [DE #36].

On March 1, 2019, the Court denied Best Doctors's Motion to Stay without prejudice to the question of a stay being the subject of further discussion at a scheduling conference, and scheduled an April 2, 2019 Scheduling Conference. [DE ##38, 39]. At the April 2, 2019 Scheduling Conference, the Court discussed the pendency of Best Doctors's Petition to the FCC and challenges to the FCC's TCPA interpretations in relation to two pending Supreme Court cases

evaluating the appropriate limits of court deference to federal agencies, and entered a Scheduling Order.  [DE #41].

On April 9, 2019, Plaintiff's counsel, on behalf of Plaintiff, made an Ex Parte Presentation regarding Best Doctors's FCC Petition to members of the FCC's Consumer and Governmental Affairs Bureau in Washington, D.C.

Between April and August 2019, the Parties engaged in extensive discovery concerning the merits of Plaintiff's TCPA claim and class certification.  Among other things, the parties exchanged requests for production, interrogatories, requests for admissions, and document productions, engaged in extensive meet and confers regarding objections to written discovery, negotiated the terms of an ESI protocol, commenced ESI discovery, and began planning and preparing for party depositions.  *See* [DE ##43, 44, 47].

During the pendency of discovery, the Parties began to discuss mediation and the potential for settlement, and engaged in intensive arm's-length negotiations to resolve the case with a view toward achieving substantial benefits for the Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice.  These negotiations culminated in the Parties' Settlement Agreement, as to which Plaintiff now seeks preliminary approval.  *See* [DE #50].

III.    **SUMMARY OF THE SETTLEMENT TERMS**

   a.    **The Class**

The proposed Settlement establishes a Class for settlement purposes only of all entities or persons that were sent the Subject Facsimiles, consisting of approximately 7,772 potential Settlement Class Members who are identifiable from the Class Data.  The Subject Facsimile are facsimiles sent by or on behalf of Defendant (a) concerning the intended recipient's potential

inclusion or listing in a Best Doctors database or the Best Doctors in America List; (b) concerning the intended recipient's review of Best Doctors inclusion data; (c) asking the intended recipient to confirm that they are currently seeing patients; and (d) directing the intended recipient to http://bestdoctors.com/for-physicians for information concerning Defendant between May 14, 2014 to present. As determined through the Class Data, 13,425 Subject Facsimiles were sent to Settlement Class Members. Agreement Section II. Excluded from the Class are: (1) the trial judge presiding over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Class Member who has timely sought exclusion from the Settlement; and (6) Plaintiff's Counsel and its employees.

b.  **Settlement Consideration**

Pursuant to the Settlement Agreement, the total cash consideration to be provided by Defendant to Settlement Class Members pursuant to the Settlement shall be $738,375.00. Individual Awards will automatically be issued to all Settlement Class Members who do not opt out, without the need for Settlement Class Members to submit claim forms, and there is no reversion to Defendant of any unclaimed monies payable to Settlement Class Members.

Additionally, pursuant to the Settlement Agreement, Defendant has agreed to not send the Subject Facsimiles again without obtaining prior express invitation or permission from the facsimile recipients. Should Defendant send the Subject Facsimiles again, Defendant shall include a statement on the facsimiles that the facsimiles are not intended to be an advertisement and only seek to provide notification of a recipient's nomination as a "Best Doctor" and to confirm certain information. Defendant shall remove any disclosures about contacting "Best Doctors" in the future about other services. Also, Defendant will include an opt-out notice as set forth in the TCPA.

### c.    **Settlement Administrator**

Pending this Court's approval, Kurtzman Carson Consultants will serve as the Settlement Administrator.    The Settlement Administrator's responsibilities include coordinating and providing Notice and administering the Settlement. Such responsibilities include the following: (i) sending Notice; (ii) establishing and maintaining the Settlement Website (described in Paragraph 7.3(a) of the Settlement); (iii) establishing and maintaining a post office box for objections and exclusion requests; (iv) establishing and maintaining an automated toll-free telephone line for Class Members to call with settlement-related inquires and answering questions Class Members may have about the Settlement or directing questions to Class Counsel, as appropriate; (v) responding to mailed inquiries about the Settlement or directing inquiries to Class Counsel for a response, as appropriate; (vi) providing weekly reports to Class Counsel and Defendant's Counsel summarizing objections and requests for exclusion received, which reports may be disclosed by Class Counsel to the Court; (vii) providing the identity of Class Members who objected to or properly excluded themselves from the Settlement; (viii) working with Defendant to establish the Settlement Fund and providing distributions to Settlement Class Members; (ix) providing Defendant with properly completed and executed tax forms or other appropriate tax information; (x) timely making all necessary elections, withholdings, and reporting to comply with any federal or state law governing taxes or unclaimed property; and (xi) performing any other or additional functions as set forth herein or as requested by the mutual agreement of the Parties.  Agreement at ¶ 7.2.

### d.    **The Notice Program**

The Notice Program consists of two components: (1) Direct-Mail Notice and (2) Full Notice through the Settlement Website. Agreement at ¶ 7.3.  The forms of the Direct-Mail Notice

and Full Notice agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits A and C.

Prior to sending Direct-Mail Notice, the Settlement Administrator shall conduct a National Change of Address Update to verify the mailing addresses for the Class Members.  Thereafter, the Settlement Administrator will provide the Class Members with notice of the Settlement as follows:

(a)      **Settlement Website**.  By the Notice Date (or after submission to the Court as to (v) and (vi) below), the Settlement Administrator will have created and then will maintain the Settlement Website to contain (i) the Complaint, (ii) the Settlement Agreement, (iii) the Preliminary Approval Order, (iv) the Full Notice, (v) Class Counsel's application for attorneys' fees, costs, and expenses, (vi) Class Counsel's application for a service award for the Plaintiff, and (vii) any other information to which the Parties may mutually agree.  Defendant will also include a link to the Settlement Website on its own website page www.bestdoctors/for-physicians.com as of the Notice Date.  The Settlement Website and link contained on Defendant's website shall be disabled thirty (30) days after the Net Settlement Amount is distributed.

(b)      **Direct-Mail Notice**.  On the Notice Date, the Settlement Administrator shall send the Direct-Mail Notice.  The Settlement Administrator shall not be required to send such Direct-Mail Notice to any Class Member whose last known street address, as updated through the National Change of Address registry, is determined to be undeliverable pursuant to one of the following mailing codes:  F (foreign move, no new address available), G (postal box closed, no new address available), or K (move, left no forwarding address).

(c)      **Full Notice**.  On the Notice Date, the Settlement Administrator will publish the Full Notice on the Settlement Website.

The Notice program is designed to provide the Class with important information regarding

the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or opt-out of the Settlement ; a date by which Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class Members may access the Agreement, and other important documents. The Notice Program here is straightforward, easy to understand for Settlement Class Members, and designed to inform members of their rights under the Agreement. Kaufman Decl. ¶ 4.

> **e.**     **Opt-Out and Objection Procedures**

Settlement Class Members who do not wish to participate in the Settlement may make a request for exclusion, or opt-out, of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement. A Settlement Class Member must opt-out of the Settlement Class by the Bar Date, which is 90 days after the Notice Date. The Request for Exclusion must be is signed personally by the Class Member and provide: (i) the name and case number that has been assigned to this Action; (ii) the full name, e-mail and mailing address, and telephone number of the person requesting exclusion; (iii) the facsimile number to which the Subject Facsimile was sent; and (iv) a statement that he, she, or it does not wish to participate in the Settlement. The Settlement Administrator will communicate any opt-out requests to Class Counsel and Defendant's Counsel, who will in turn report them to the Court as part of the Final Approval Hearing to be identified in the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than the Bar Date.  A written objection must include:  (i) the name and case number of the Action; (ii) the full name, address, and telephone number of the person objecting; (iii) the facsimile number to which the Subject Facsimile was sent; (iv) a statement of each objection; (v) a written statement detailing the specific reasons, if any, for each objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection(s); (vi) the identity of all counsel who represent the objector and who may appear at the Fairness Hearing; (vii) a list of all persons who will be called to testify in support of the objection at the Fairness Hearing; (viii) a list of all other putative class actions to which the objector has submitted an objection over the last ten (10) years; (ix) a statement of whether the objector and/or his or her counsel intends to attend the Fairness Hearing; (x) any and all agreements that relate to the objection or the process of objecting—whether written or oral— between objector or objector's counsel and any other person or entity; and (xi) the objector's signature (an attorney's signature is not sufficient).  Agreement at ¶ 8.2(a).  Any Settlement Class Member who submits a timely objection, as set forth above, may appear at the Fairness Hearing with or without counsel at the Settlement Class Member's own expense.  If a Settlement Class Member is represented by counsel, such counsel must file a Notice of Appearance with the Court and serve a copy of the Notice of Appearance on the Settlement Administrator, Class Counsel, and Defendant's Counsel no later than fifteen (15) calendar days before the Fairness Hearing. Agreement at ¶ 8.2(b).

**f.    <u>Release of Claims</u>**

In exchange for the settlement consideration, Plaintiff and the Settlement Class Members, agree to the releases as defined in Section X of the Agreement.

### g.    Net Settlement Amount

Each Class Member who does not timely and validly opt out shall automatically receive a cash distribution payable by check.  The amount of each Individual Award shall be determined by dividing the Net Settlement Amount (which shall be determined after the Court rules on Plaintiff's Applications for Unopposed Fees and Costs and Unopposed Service Award, as set forth in the Agreement) by 13,425 and then multiplying that amount by the number of Subject Facsimiles received by each Settlement Class Member (based on the Class Data).

### h.    Distribution of Settlement Funds

The Settlement Administrator shall mail each Settlement Class Member a check in the amount of the respective Individual Awards no later than forty-five (45) calendar days after the Effective Date.  Checks will be mailed to the last known mailing address the Settlement Administrator identifies through its standard practices when sending Notice.  Checks shall be valid for 180 days.  If the Settlement Administrator receives any checks returned as undeliverable by the United States Postal Service, the Settlement Administrator will use reasonable efforts to updated the Settlement Class Members' addresses and re-mail them checks.  Any Unclaimed Monies, pursuant to ¶5.4 of the Agreement, shall be distributed by the Settlement Administrator to a charitable organization mutually agreed by the Parties and shall not revert back to Defendant.

### i.    Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendant has agreed not to oppose Class Counsel's request for attorneys' fees of up to $246,125 and reimbursement of documented costs and expenses of up to $10,000. Defendant has also agreed not to oppose an application for a Service Award for the Plaintiff of up to $5,000. Agreement at ¶¶ 4.2 and 4.4.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

**IV.**    **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

   **a.**    **The Legal Standard for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888 (7th Cir. 1985).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The First Circuit has long recognized that there is an overriding public interest in favor of settling class actions.  *See Lazar v. Pierce*, 757 F.2d 435, 439 (1st Cir. 1985); *see In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements").

A district court "can approve a class action settlement if it is fair, adequate and reasonable." *City Pshp. Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996), quoting *Durrett v. Housing Auth. Of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). At the preliminary approval stage, this Court need only be satisfied that there is "probable cause" to believe that the settlement is fair and reasonable and "within the range of possible approval" to warrant sending notice to class members and proceed to a fairness hearing.  *Id*.; *see In re JPMorgan Chase Mortg. Modification Litig.*, No. 1:11-md-02290-RGS, 2014 U.S. Dist. LEXIS 76264, at *5 (D. Mass. May 28, 2014) (granting preliminary approval where the settlement was "fair, reasonable, and adequate,

and within the range of possible approval"); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). In the second step, after notice to Settlement Class Members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id*.

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness and satisfies all standards for Preliminary Approval.

### b.    <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Kaufman Decl. ¶ 5.

### c.    <u>The Settlement Agreement is the Product of Good Faith,<br>Informed and Arm's Length Negotiations</u>

There is a "strong initial presumption of fairness" when a proposed settlement is "the result of arm's length negotiations" and plaintiff's counsel is experienced and has engaged in adequate discovery. *Hispanics United v. Village of Addison,* 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial

presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery to enable counsel to act intelligently; and (iv) the number of objectants or their relative interest is small.").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation, and the TCPA in particular, and with the legal and factual issues of this Action.  Kaufman Decl. ¶ 6. Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Kaufman Decl. ¶ 7 and Exhibit 1.  Class Counsel zealously represented Plaintiff and the putative class throughout the litigation, including by opposing Defendant's petition to the Federal Communications Commission, and will continue to do so until this matter is fully resolved. Kaufman Decl. ¶ 8.

In negotiating this Settlement, Class Counsel had the benefit of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Kaufman Decl. ¶ 7 and Exhibit 1 thereto.  As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claim and engaged in extensive informal and formal discovery. *Id*. ¶ 9. Class Counsel's review of that discovery enabled him to gain an understanding of the evidence related to central questions in the Action and prepared him for well-informed settlement negotiations.

### d.  The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### i.    Likelihood of Success at Trial

Class Counsel is confident in the strength of Plaintiff's case, but is also pragmatic in the

13

awareness of the various defenses available to Defendant, and the risks inherent in trial and post-judgment appeal. Kaufman Decl. ¶ 10.  The success of Plaintiff's claims turn on questions that would arise at class certification, summary judgment, trial and during an inevitable post-judgment appeal, as well as the FCC's ruling on Defendant's petition.  Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *Id.* ¶ 11.

Even if Plaintiff and the Class prevailed at trial, any recovery could be delayed for years by an appeal.  This Settlement provides substantial relief to Settlement Class Members, without further delay.

> ### ii.     Range of Possible Recovery and the Point On or Below <u>the Range of Recovery at Which a Settlement is Fair</u>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Rather, the settlement must be lawful, fair, reasonable, and adequate.

The $738,375.00 made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, a motion for summary judgment, *Daubert* motions, trial, and appellate review following a final judgment, as well as an FCC ruling on Defendant's pending petition.

There can be no doubt that this Settlement is a fair and reasonable recovery in light of

Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class Members would face absent a settlement. Kaufman Decl. ¶ 12.

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable.  Thus, the Settlement is the best vehicle for Settlement Class Members to automatically receive the relief to which they are entitled in a prompt and efficient manner. Kaufman Decl. ¶ 13.

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. In addition, Defendant has agreed to take remedial measures to ensure TCPA compliance going forward. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

**e.    Certification of the Settlement Class is Appropriate**

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Class as defined in Paragraph 2.6 of the Agreement. Rule 23 allows a court to certify a class conditionally or provisionally for purposes of effectuating a settlement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Class will allow notice of the Settlement to issue to inform Settlement Class Members of the existence and terms of the Settlement, of their right to object and

15

be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Class consists of 7,772 potential Settlement Class Members, and joinder of all such persons is impracticable. Fed. R. Civ. P. 23(a)(1); *see, e.g.*, *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900 member class made joinder impracticable).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's transmission of the Subject Facsimiles – that are common to the Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers, including whether Defendant's facsimiles constituted advertisements.

16

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same types of conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.,* 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991). Typicality does not require that the named plaintiff's claims be identical to those of the class. Under the Rule's "permissive" standard, representative claims are typical if they are reasonably coextensive with those of absent class members. *Swack v. Credit Suisse First Boston,* 230 F.R.D. 250, 260 (D. Mass. 2005). As long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory, varying factual differences between the claims or defenses of the class and the class representative will not render the named representative's claims atypical. *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997). Plaintiff is typical because it received the Subject Facsimile from Defendant and claims to have suffered the same injuries as other Settlement Class Members, who will all similarly benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. First Circuit district courts employ a two-part test in analyzing adequacy, evaluating (1) whether the class representative's interests conflict with the interests of the class, and (2) whether class counsel is experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).  Both requirements are met. First, there is no conflict or antagonism whatsoever between the Plaintiff and the Class Members. All share a united interest in putting an end to Defendant's allegedly illegal facsimile marketing practices, and

all seek redress for the harm they suffered as a result of receiving Defendant's facsimiles. Second, Class Counsel is an experienced class action lawyer whose specific experience in TCPA matters, and diligence and commitment to this litigation, will more than adequately protect the interests of the class. In fact, Class Counsel devoted substantial time and resources to the vigorous litigation of the Action.  Kaufman Decl. ¶ 9 and Exhibit 1 thereto.

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  The Rule 23(b)(3) predominance requirement is satisfied here because liability questions common to all Settlement Class Members arise from Defendant's common practice. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together").

The superiority requirement is also satisfied here. Certification allows the plaintiff to pool claims which would be uneconomical to litigate individually. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Here, it would be uneconomic for individuals to pursue TCPA claims on their own, and therefore unlikely they will do so. *See Smilow v. Southwest Mobile Sys. Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) ("The core purpose of Rule 23(b)(3) certification is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."). Resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  For these reasons, the Court should certify the Class for purposes of the settlement only.

### f.    The Court Should Approve the Proposed Notice Program

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class

members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see also Manual for Compl. Lit*., § 21.312 (listing relevant information). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged adequate where the notice announces the date of the settlement hearing, outlines the allegations prompting the litigation, and summarizes the settlement terms. *See Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

The Notice program more than satisfies these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class Members of the substantive terms of the Settlement and their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's attorney's fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement.

The contents of the proposed Notice are more than adequate. It provides Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement. As such, it satisfies the content requirements of Rule 23. *See e.g. In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

Additionally, as a result of Defendant's data relating to the identities of Settlement Class Members that will be used to provide direct mailed notice, the Notice Program is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the Notices.

## V.      **Proposed Schedule of Events**

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.  Class Counsel proposes the following schedule:

| Event | Date |
|---|---|
| Notice Date | 30 days after Preliminary Approval |
| Deadline for submission of application for payment of Unopposed Fees and Costs and Unopposed Service Award | 105 days after Preliminary Approval |
| Bar Date: Deadline for opting-out of Settlement and submission of objections | 120 days after Preliminary Approval |
| Deadline for filing papers in support of Final Approval of the Settlement, including any responses to objections, if any | 10 days prior to the Final Approval Hearing |
| Final Approval Hearing | Approximately 145 days after Preliminary Approval |

## VI.      **Conclusion**

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify the proposed Class; (3) approve the Notice program and proposed Notices; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Class Representative; (6) appoint Avi R. Kaufman of Kaufman P.A. as Class Counsel; and (7) schedule a Final Approval Hearing.

Respectfully submitted,

Dated: August 30, 2019                     KENNETH A. THOMAS MD, LLC,

By its attorney:

*/s/ Avi R. Kaufman*

Avi R. Kaufman (admitted *pro hac vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 30, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<u>/s/ Avi R. Kaufman</u>